The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention to the courts now sitting. God save the United States and this honorable court. All right, thank you. You can be seated. Mr. Hancock, whenever you're ready. May it please the court. My name is Thomas Hancock and along with Paul Frampton and Bowles Rice, we represent Westmoreland Coal Company in this appeal. And this appeal presents really three categories of questions for this court. And the first one is what the role of the preamble is. Whether or not the preamble stopped medical science at a standstill when it was adopted and whether or not doctors are limited to looking at the science in the preamble when they're forming their medical opinions. The second more specific question is related to the discretion that the Fourth Circuit found in Harmon and whether or not the judge's decision in this case took that discretion too far and whether or not the judge applied the wrong legal standards. And the final question is whether or not the judge in this case impermissibly shifted the burden of proof when she made her decision. I want to return to the first question, which is the role of the preamble. And your honor, the preamble simply cannot be used to prevent physicians from relying on a combination of the characteristics of the claimant's impairment and all of the medical science and data they have to reach an opinion about the causation and the existence of pneumoconiosis. And in this case, that's not what the ALJ found. The preamble didn't stop science at a standstill when it was passed. And there's a lot of reasons for that. There's been an explosion of cigarette-related research over the last 15 years. There's been an explosion of asthma-related research over the last 15 years. There's been an explosion of research into airway remodeling over the last 15 years. And airway remodeling, I think, is particularly important to this case. Obviously, there weren't any studies in the preamble about the effects of drugs like Spiriva. Spiriva wasn't approved by the FDA until 2004, so the preamble couldn't discuss it when it was passed in 2000. Did any of the doctors indicate a problem with the preamble? No, Your Honor. Our doctors didn't contradict the preamble or say anything bad about the studies that were in the preamble. In fact, if you look at the ALJ's decision, I think it's joint appendix 379, she points out that Drs. Hibbenstiel and Zaldivar, quote, say all the right things. And she, in fact, went through some of the things in the preamble that they agreed with. So I guess I'm trying to understand. You say the preamble, it sounds like it restricts the doctors unnecessarily, doesn't allow them to express their full opinion, but they didn't complain about it? Well, let me explain to you what happened in this case. Drs. Hibbenstiel and Zaldivar found that the gentleman did not have legal pneumoconiosis, and they based that on a number of different etiological factors, not just coal line dust, not just smoking. They also looked at asthma, airway remodeling, and these other things. And the judge, ALJ, looked at those opinions and said, they're less consistent with what's in the preamble, so I'm going to accord them less weight. And our argument is really twofold. First of all, I don't think that Drs. Hibbenstiel and Zaldivar said anything contradictory to the preamble at all. And that's what really distinguishes this case from Harmon. In Harmon, you had a judge that said that legal pneumoconiosis cannot cause obstructive pulmonary disease. ALJ and Harmon said that is directly contradictory to the preamble. That's the same kind of broad, categorical statement that's in the preamble. But you would say that that's wrong. It would be your submission that if that had happened here, that that was incorrect. Right. So I'm not sure where that argument gets you. Well, if that's what happened here, that would be... Incorrect, but Harmon hailed to the contrary, so you'd be out of court, right? Oh, no. I don't disagree with Harmon at all. I think... You don't? I must have confused you. And listen for that. In Harmon, the doctor made this broad, categorical statement that legal pneumoconiosis cannot be... that coal mine dust exposure cannot cause obstructive pulmonary disease. And that's clearly contradicted by the same kind of broad statements in the preamble. But in this case... But my point is the ALJ could rely on a preamble when the doctor's opinion was directly contrary to it. But in your view, it cannot rely on the preamble when the doctor's view is consistent with it. Those two arguments don't float together. If it can rely on it when the doctor's opinion, your doctor's opinion is to the contrary, surely it can rely on it when your doctor's opinion is consistent with it. If the preamble is consistent with your doctor's opinion, it's no harm, no foul. But in this case, the judge awarded our doctor's opinions less weight... Relying on the preamble. Because she held that they were inconsistent with the preamble. Okay. Maybe I don't... You're right. I don't think we do understand each other. What you have said, I thought, was if your doctor's opinion was inconsistent with the preamble and the ALJ relied on the preamble, you would acknowledge that circuit precedent says that's all right. Let me... But you're now saying because our doctor's opinion is consistent with the preamble and the ALJ relied on the preamble, there's somehow error. And that logically just can't follow. Let me try to come at this from a different angle and maybe it'll clarify things. In the NMA decision, which was the industry's challenge to the constitutionality of the regulations, one of the arguments that the industry made was these regulations are unconstitutional because they prevent a doctor from reaching the medical conclusion that a claimant's impairment is ever caused by cigarette smoking. And the Department of Labor's position, which was ultimately adopted by the D.C. Circuit and NMA, was no, that's wrong. The regulation's plain text in no way indicates that medical reports will be excluded if they conclude that a minor's obstruction is related to cigarette smoking. And in fact, NMA goes on to say that the preamble itself states that the revised definition doesn't alter the requirement that a minor has to demonstrate that their obstructive lung disease arose out of work in the mines. And I think that that is exactly what the ALJ in this case did. She looked at the preamble and saw that in the preamble it says generally some of the symptoms from coal mine dust and cigarette smoking are similar. And therefore, these doctors who said this gentleman, based on his individual characteristics, we can say this was not substantially caused by coal mine dust exposure, the ALJ felt that that was inconsistent with the preamble. Did that? No. I think that we're just, I don't know if it's on purpose or not. But anyway, go for your argument. I've got two colleagues here. Didn't the ALJ give an alternative basis for rejecting the opinions of the experts? That's one of the things that was argued in the director's brief, Your Honor. Basically, the ALJ stated that these opinions were based on clinical pneumoconiosis and not legal, and that that was a reason to give them less weight. And we disagree with that as well. I think that that also is error. Under this court's- Your consideration that maybe he looked at the preamble and discredited the testimony. It's a legally impermissible basis, but it's not the preamble basis. I guess it is an alternative basis. So if we found that basis to be sufficient, we don't need to consider that preamble argument. Well, I don't think so, because the way this works, the judge has to weigh all the preponderance in the evidence, and this ALJ took into account both the preamble issues and this other issue that you're raising now and used both those things to weigh the evidence. I think because you remove one weight from the scale, we can't say that she would have found the same thing she did. And I think that this court's decision in Island Creek-Cole v. Compton pretty clearly states that all the evidence of both clinical and legal pneumoconiosis have to be weighed together. You don't weigh the evidence of clinical pneumoconiosis first and the evidence of legal pneumoconiosis second. You weigh it all together. Are you asking us to advance the state of the law on this? Because it seems that the existing law permitted and indeed may have required the ALJ to consider this preamble or allowed him to do so, and it doesn't appear that he made it outcome determinative in looking at it. But the present law seems to allow him to do that. Are you asking us now to say that, well, this preamble can be outdated and it may not allow for the science to express advancements that have occurred? No, Your Honor. Is there a case that says that is what I'm saying? A case that says that? That supports your position that the preamble has that effect. Well, I'll tell you what the cases say. The standard for reviewing medical evidence. Make it simple for me. Tell me whether or not they support. Is there any case that supports what you bring forth here today? And to get there, if we agree with you, do we have to write something that no other case has basically said? Well, there's two things I'd say about that. And the first is that I think the NMA case that I was talking about earlier addresses this. Now, it addresses it in a perspective manner because it was addressing whether or not the regulations were constitutional. I mean, of course, you have circuit precedent. It's pretty recent. The Harmon case. The DC circuit case, which just dealt with the constitutionality. So I'd be interested in your actually direct response to the question that Judge Winn asked you. Judge Winn, in Harmon-Mining v. Looney, as you know, this court found that ALJs have the discretion to look at the preamble. And this case doesn't challenge, you know, our arguments, I don't think, challenge Harmon v. Looney. What we're saying is what is the limit of the discretion in Harmon v. Looney? Can ALJ do what they did here and say which one is more or less likely or more or less consistent with the preamble? When in Harmon, she said that opinion is inconsistent. Well, I think his question to you was, is there any court whose holding supports your view? And I don't know that there is. Harmon surveyed two other circuits, relied on them. And they came to the same conclusion that we did in Harmon. And I don't know, have you asked us to hold this case in light of Harmon until Harmon was decided? Have you looked at the record and the briefs in Harmon? Yes, I have, Your Honor. And the cases are almost flat-on identical. Same kind of experts, same kind of injuries, about the same amount of time working for mines, about the same amount of time underground. Twins. Maternal twins. Let me explain to you the differences between the two twins. In the Harmon case, the doctor whose opinions were being excluded made this broad categorical statement that, and I want to make sure I get it right. There's some pretty broad categorical statements here. I don't know that that would be my first ground for trying to distinguish it. Well, the difference is the type of statement made by the doctor who was excluded at Harmon, Dr. Fino, was this broad categorical statement that pneumoconiosis, that coal mine dust exposure can't cause obstructive lung disease. And that's clearly contradicted by the broad categorical statements in the preamble. The difference in this case, and if you look at the ALJ's order, it's Joint Appendix, page 379, she specifically says, doctors Hippenstiel and Zaldivar say all the right things. And she goes through all the ways that they agree with the preamble. Their opinion was that this claimant's obstructive lung disease was not substantially caused or contributed to by coal mine dust exposure. Not that it never can happen to anybody in the history of the world, but that for this specific claimant, it didn't happen. And that's the difference between this case and Harmon. That's why I think that our position in this appeal is not inconsistent with Harmon. It's consistent with Harmon. And if you look at the other, the Third Circuit case, and I think it was the Sixth Circuit case, Seventh Circuit case that are, you know, similar to Harmon, they were dealing with the exact same thing. They were excluding a doctor who had this broad categorical view that contradicted the broad categorical views that are in the preamble. They weren't talking about a doctor who looked at the individual medical criteria of the claimant and the whole world of scientific knowledge, not just about coal mine dust and smoking, but about asthma, airway remodeling, and these other factors, and reached a rational medical conclusion. And that has always been the standard in these cases. Is the opinion rational, and is it in accordance with the medical evidence? And that's how this judge should have reviewed these opinions. And under Harmon, clearly she can look and see if a medical opinion is inconsistent with something in the preamble. But I don't think it's correct that she can say, well, which doctor is most consistent with the preamble? Which doctor is less consistent with the preamble? And the final thing that I want to address with the court is whether or not the judge impermissibly shifted the burden of proof in this case. And that was the third argument that was in our brief. You know, the judge stated that the 15-year presumption doesn't apply here because this gentleman only worked 13 years at the coal mines. But when you look at how she evaluated the evidence, she basically found that if coal mine dust exposure could have caused impairment, that the claimant met his burden of proof. And that's not the law here. That's not what he has to show. He has to show that it substantially contributed to his illness. If there aren't any other questions, I'm going to sit down. Somewhere, I don't know, maybe I read it too fast, but wasn't there something in it that he said he didn't rely on that presumption? That's true, Your Honor. The ALJ found that the presumption did not apply. You have to have 15 years of coal mine employment to get that presumption. And this gentleman had 13. So he did not gain that presumption. But when you look at the way the ALJ weighed the evidence, the ALJ didn't look at whether or not the claimant proved that coal mine dust had substantially contributed to his disease. The ALJ looked at whether or not our doctors had disproved it. There's a question. And from that, you say he must have then been relying upon a presumption. Well, the burden of proof was impermissibly shifted. And the burden of proof that I think the ALJ applied in this case is similar to the rule-out standard you get when the presumption applies. But that's incorrect. Well, I thought the presumption was, Well, the discussion about the burden shifting was based on the ALJ's statement that it is not established that coal dust did not aggravate his asthma. Right. It is not established that coal dust did not. That's not their burden. Their burden is that they have to prove it was. And I think that there's a Judge Niemeyer case that we cite in our reply. It's U.S. Steel Mining v. Director. And Judge Niemeyer used the analogy, if your burden is to prove the traffic light was green when you pulled up, a statement that it could have been red, could have been yellow, is not enough. You have to actually show that it was green. Thank you, Mr. Hancock. Let's hear from Mr. Gilligan. May it please the Court, my name is Ryan Christopher Gilligan, and I represent Mr. Cochran in this matter. This is a brief review of this case. This case presents issues of whether the Judge's weighing of the conflicting evidence is supported by substantial evidence, and whether the Judge's citation reference to the preamble is in accord with law. Mr. Cochran is a retired coal miner who spent at least 16 years employed in the nation's coal industry, working in various facets of coal mine work underground and surface. It's without question he's totally disabled, suffering from an obstructive impairment. In this preamble, it seems to have been most of the argument we just heard. Yes, Your Honor. In this case, the Judge credited the opinion of Dr. Rasmussen as being consistent with the preamble. Dr. Rasmussen offered the opinion that this miner suffers from asthma and COPD and emphysema. Now, the COPD and emphysema is the part of this case that relates to the preamble specifically. Now, Westmoreland has made an argument about medical literature cited by Dr. Zaldivar in this case, which came out after the date of the preamble, but that literature focused on asthma. They don't contest that this miner suffers from COPD and emphysema. So the discussion of asthma is sort of irrelevant as it relates to the ideology of this miner's emphysema. Dr. Rasmussen offered a supplemental opinion in this case, wherein he reviewed the initial reports of Dr. Hippensteel and Zaldivar, reviewed his initial findings and some of the treatment records, and offered an opinion that coal dust exposure and cigarette smoking cause COPD and emphysema through an additive process that's indistinguishable. Do you agree with the opposing counsel that the two experts for the other side offered opinions that were not inconsistent with the preamble? I don't agree with that statement, Your Honor, because they are inconsistent with the preamble. How so? First, Dr. Hippensteel offered an opinion that this miner's impairment continued to progress following the cessation of his exposure to coal mine dust exposure. And he ruled out coal dust exposure as a cause of that impairment because there was a lack of X-ray changes of pneumoconiosis. And what happened in the preamble was the Department of Labor promulgated new regulations and the preamble explained the definition of legal pneumoconiosis, which is an independent diagnosis of pneumoconiosis that does not... Can you get to the point of where the inconsistency is? Yes, Your Honor. The inconsistency is that the regulations and the preamble do not require radiographic findings of pneumoconiosis in order to render a diagnosis of pneumoconiosis. And I'd also note, as noted by the director, that it's uncertain specifically whether Dr. Hippensteel diagnosed emphysema in this case. Now, Dr. Zaldivar offered an opinion that emphysema and cigarette smoking cause... cigarette smoking and coal mine dust exposure cause emphysema through different processes. That's contrary to the preamble where it has found that the literature supports that they... that emphysema is caused... cigarette smoke and coal dust exposure cause emphysema through a similar process. Further, Dr. Zaldivar was focused on the condition of clinical pneumoconiosis, noting that the coal dust exposure causes emphysema through dust particle deposition and that the X-ray correlates well with the amount of that dust at autopsy. And in this case, the X-rays were found to be negative. So the opinions of Drs. Hippensteel and Zaldivar do conflict with the preamble. And as Judge Wynn noted, Judge Morgan did find that these physicians premised their opinions on clinical pneumoconiosis and the judge... this does not address legal pneumoconiosis as specifically addressed by Dr. Rasmussen. Dr. Rasmussen... Are you saying that consulting X-rays to reach a determination as to whether or not coal dust exposure causes problem is inconsistent with the preamble? No, Your Honor, I'm not saying that at all, but these physicians focused on the X-ray solely to determine whether legal pneumoconiosis was present and the regulations and the preamble do not require a positive X-ray to render a diagnosis of pneumoconiosis. There's two kinds of pneumoconiosis. Yes, Your Honor, that's correct. One is the pneumoconiosis you can see on the X-ray and coal miners' pneumoconiosis that you cannot see. And that's been well established in our case law because we get a lot of Blackburn cases for a long time. Yes, Your Honor. And not disputable, really. And then finally these regulations came along and blessed it and the regulations as well as the preamble say you can have both. And indeed, one of the things that has had to be amended is that the experts now have to concede you can have coal miners' pneumoconiosis recoverable for coal mine benefits without any X-ray evidence of it. That's correct, Your Honor. And in this case... Very confusing if you're not in the field to relearn the difference between, I think, coal miners' pneumoconiosis and regular pneumoconiosis and clinical pneumoconiosis. I'd agree that the definitions are... In this case, I don't think Compton is implicated. The judge considered all the evidence. And it's the judge's discretionary role as the fact finder to weigh this conflicting evidence. And in this case, the judge rationally found the opinion of Dr. Rasmussen as supported by 30 pieces of medical literature and his supplemental opinion established the condition of legal pneumoconiosis. As I said previously, there's no contest to disability, and the judge permissibly, in accord with this court's prior holdings in Scott v. Mason, Cole, and Toller, rejected the opinions of Drs. Zaldivar and Hippenstiel, turning to the ideology of the disability because they didn't diagnose the disease. And they didn't offer a persuasive reason for finding that the pneumoconiosis didn't substantially cause to the impairment. And that's well within... Dr. Hippenstiel said that asthma was the sole cause of the disease. So how could he determine whether or not the guy had... what kind of pneumoconiosis he had? Because he said asthma was the sole cause. Turning to the ideology of this minor's disability, Your Honor... You speak in actual, regular English instead of ideology. Well, maybe. My colleagues are probably more sophisticated about these medical terms. I'm sorry, Your Honor. Without diagnosing pneumoconiosis, it would be hard to imagine how Dr. Hippenstiel could exclude pneumoconiosis as a cause of this minor's disability. I don't think anything specific in this record supports that Judge Morgan afforded the minor an irrebuttable presumption that his disability was due to coal mine dust exposure and cigarette smoking. And the issues are substantial evidence, and substantial evidence supports this judge's weighing into conflicting evidence. If we... if suddenly there had... well, eventually, if there's some technology that comes forth that you could distinguish between smoking and coal dust exposure in this determination, does the preamble prohibit that from being used at this time? No, Your Honor. In Harmon Mining v. Director and Looney, this court found that it's within the judge's discretion to consult the preamble. Now, Westmoreland is correct that medical science has not stopped dead. But if new studies come out that undermine the findings in the preamble, that would have to be... the Department of Labor, I assume, and I assume the Department of Labor will address in this case, that the Department of Labor would consult those studies to determine if the regulations are still valid. But a challenge could be made by an operator to bring forth that study and to try to prove that that study is supported by more substantial evidence at the time than the findings in the preamble. But to my knowledge, such study doesn't exist yet. In other words, the preamble would have to be changed. Well, the regulation might have to be changed, Your Honor. But at this point, that hasn't happened. So I don't think anything in this case supports that the regulation's invalid or any of the findings in the preamble are invalid. And I don't think Westmoreland can test that. Instead, it's more that Dr. Zaldivar cited to these two studies after the preamble, but they weren't really relevant to the issue. And the issue is the COPD and the emphysema. Indeed, they claim that they are consistent with the preamble. And I would, as I discussed earlier, Your Honor, I would disagree with that. If there are no further questions. Thank you. Mr. Goldberg. Mr. Goldberg, would you first off address the question that your colleague left with, which is a question that sort of bothered me. What if new science comes along and shows that something in the preamble is wrong? Isn't a party able to come to the ALJ and introduce this new evidence and have the ALJ at least consider that the preamble might be wrong? Absolutely. It just hasn't happened in this case. I understand that, but you wouldn't have to have a new regulation or a new preamble in order for the ALJ to consider new scientific evidence. ALJ is bound to consider all relevant evidence. Just as Mr. Gilliam pointed out, the four studies cited by Dr. Zaldivar have nothing to do with whether this minor's coal dust exposure contributed to his disability. No other doctor disputed his finding that the minor's asthma may have led to lung remodeling or that he may have emphysema. The question is whether his coal dust exposure contributed to the impairment. Dr. Rasmussen said it did. The ALJ credited his opinion as reasoned and documented and consistent with the preamble. Substantial evidence supports that finding. The other factor is that the ALJ, as you pointed out, offered an alternative ground. He said that Dr. Zaldivar and Hippensteel relied on the absence of clinical pneumoconiosis to find the absence of legal pneumoconiosis. Before you move from there, I just want to make sure in terms of the new technology possibility, Harmon states that an ALJ should not credit expert opinions of doctors who rely on facts or premises that conflict with the act. And if this new science or technology comes forth, how will he be able to deal with it? I think it will depend what the new science or technology shows. I don't know that the act would have to be amended. The act itself is much more general than the preamble. The act doesn't make reference to medical studies or how smoking and coal dust exposure affect lung tissue specifically. The preamble not considered to be typically in some instances is not the same as the Black Metal Law, but how is that? It's guidance. It explains the rationale behind the implementing regulations, and it explains how we think the regulations should be interpreted. If new science comes along and the new science is found credible and it's offered into evidence, then absolutely the judges should consider that. One last question. So are you saying if it conflicted with the preamble but not with the act itself, then it can be considered? Absolutely. Yes. Can I go back to a question the Chief Judge asked your colleague on the other side? And that was something to deal with what was said about proof here. Do you remember the question? I'm not sure I do. I'll help him. Good. ALJ made the statement that it is not established that coal dust did not aggravate his asthma. And so the question is, why doesn't that effectively shift the burden to the coal company? Because that was not really the basis for the ALJ's finding of legal pneumoconiosis. The basis is that he found Dr. How would you characterize that statement? Beg your pardon? How would you characterize that statement? Inelegant at best. But he awarded benefits based on his finding that Dr. Rasmussen's opinion is credible. You think that's describing what happened. Yes. But not providing the basis for what happened. Thank you. Exactly. Well, I'm not sure that that's right. Anything you have to add to that? I wouldn't rest my feeble efforts. Dr. Rasmussen offered his opinion. He said, in my experience, based on the exam, based on the medical literature, based on this minor's relevant histories, his coal dust exposure contributed to his totally disabling pulmonary impairment. And he found that the operators, Dr. Sippen, Steele, and Zeldovar's opinions were less credible and did not outweigh Dr. Rasmussen's opinion. In doing so, he said they didn't do this or they didn't do that. Exactly. Or did do this or did do that. Okay. Do you have anything to add to that? No, I think it really is just that simple and just that direct. And what's more, I pointed out the ALJ found that Dr. Sippen, Steele, and Zeldovar relied on the negative x-rays to conclude that he didn't have legal pneumoconiosis. More to the point here. You don't need x-ray evidence. No, the act specifically says notwithstanding negative x-rays. But even more so, Westmoreland did not dispute that finding before the board and they did not dispute that finding before this court in its opening brief. They've waived it. And in fact, in their reply brief, they're still... I'm sorry. They have waived the argument that the ALJ was wrong in finding that the operator's doctors relied on the absence of clinical pneumoconiosis to rule out legal pneumoconiosis. And in fact, in their reply brief, they are still arguing that the ALJ should have relied on those negative x-rays. Beyond that... Excuse me. It's also very similar, moving away from the waiver issue, to a finding this court made in Harmon Mining where they affirmed the ALJ's rejection of Dr. Hippensteele's opinion because he relied on the negative autopsy to rule out legal pneumoconiosis. Really, I think the only question that the court really needs to consider is whether the ALJ acted within his discretion in crediting Dr. Rasmussen's opinion. And we think he did. As we pointed out, Dr. Rasmussen's opinion is based on the medical literature, his exam, the objective studies, the miners' histories, and it is consistent with the preamble in terms of how both dust exposure and tobacco smoke cause emphysema. He said both the toxic substances release enzymes in the lung that leads to lung tissue destruction. That's consistent with the medical literature, consistent with the medical literature cited in the preamble. Can I ask you a question? Please. It's sort of a general question. We see the same doctor on the same side, and probably we have a repeat of ALJ's, and they probably have a bias too. Is there anything to be done about this system? Is there anything the Department of Labor can do to shake things up? Not that I know of. I assume that operators hire doctors whose medical beliefs coincide with... The ALJ is a public servant. Of course. I haven't, but I bet you could track a general trend among ALJs as well as among doctors. That may well be true. In fact, years ago, and I wish I remembered the case name, Judge Hall, I think, on this court, had said that show him the name of a doctor and he'll tell you what the opinion says. Right, but he didn't go as far as to say, show me the name of the ALJ and he'll tell you what the opinion is. And I just wondered if the Department of Labor had given any thought to try to rectify or even out this situation. Not as far as I know, but I think that would be above my pay grade, as they say. Well, maybe you can take it back to people. At least I think it's a concern. I will mention it. Thank you. Finally, the ALJ, as I said, has reacted within his discretion in discounting Dr. Sippen, Steele, and Zeldovar aside from the waiver issue. Their opinions are contrary to the preamble. They said that emphysema due to dust and emphysema due to smoking result in different mechanisms for causing emphysema. The preamble says otherwise. They testified that emphysema, when it's related to dust exposure, is accompanied by x-ray evidence of pneumoconiosis, contrary to the Act regulations and the preamble. And finally, the ALJ's opinion is supported by substantial evidence. I mean, that's really what this comes down to. Thanks very much. Thank you, Mr. Zeldovar. Mr. Hancock. Thank you, Your Honor. I want to start out with addressing what was Mr. Goldberg's last point, which is that the preamble says that some of these mechanisms work in a similar way. And the difference now is that with the explosion of cigarette-related research over the last 15 years, we know so much more about the way cigarettes work on the lungs. We know that there are over 4,000 different chemicals that are released into the lungs and how those operate on the lungs. I also want to go back to the sort of burden-proof issue. And I know earlier when I was up here, I talked to you about the Judge Niemeyer analogy about the green light. And I would point out that in that case, he was referencing Dr. Rasmussen's opinion that legal pneumoconiosis existed because coal mine dust could have caused the claimant's impairment. He said that's not good enough. The standard is not could have caused. It's whether it substantially contributed to. That's what the claimant has to prove. Do you want us to change, say that the preamble should be changed, or are you saying that the ALJ abuses discretion? I'm saying that the ALJ abuses discretion in this case, Your Honor. And if the opinions are directly inconsistent with the preamble, like I said earlier, make some broad categorical statement that's contradicted by what's in the preamble, that's one thing. But it's another thing to say that these doctors can't rely on all the medical knowledge at their disposal and all of the characteristics of the claimant to put those things together to reach a rational medical decision. That has to be the touchstone. Is the opinion rational and is it consistent with the medical evidence in the case? If we ignore those two factors and just look at what's more consistent or less consistent with the statements from 15 years ago that were the basis for the studies in the preamble, I just don't think that that's fair. Another... Your opponents seem willing to characterize the statement I read to you as a stray comment by the ALJ. Do you want to respond to that? I think that that is anything but a stray comment by the ALJ and it's anything but a sort of recitation of her analysis. Where is it in the JIC? I believe it's on page 379. That's correct. And it's in the same paragraph where the ALJ is talking about the preamble. And, you know, that comment is exactly the point of our argument that the burden was shifted in this case. The ALJ did not ask whether or not Dr. Rasmussen could show that coal mine dust substantially caused or contributed to this gentleman's impairment. And she looked at whether or not our doctors could disprove that. And, in fact, that's the problem with Dr. Rasmussen's opinion that smoking and coal dust cause identical injury. Because if they caused identical injury, you could never prove legal pneumoconiosis. Because you absolutely have to be able to say that coal mine dust substantially contributed. If they caused an identical injury, it could have been 100% from coal dust, it could have been 100% from smoking, and we just don't know. Your position is the ALJ was saying, well, if this evidence could indicate two causes, all the evidence could indicate either cause, then the burden's on the coal company to prove that coal dust didn't cause it. That's exactly what the ALJ did in this case. And this court has rejected... Can you help me? Can you show me exactly where it is? I bet you can do that on paragraph. I bet Judge Traxler can do it if he can. Let me see. This is all in the existence of pneumoconiosis, sort of a preliminary section, right, where you get to cause of pneumoconiosis, existence of total disability. It's in the previous section. It's a very long, single-stage pneumoconiosis. Let me find that for you, Your Honor. You know, I don't want to take up your time. I'll find it. Not to worry. Go ahead on to your next, sir. Go ahead on your next. I want to address Judge Winn's questions. I can show you. Let me just show you. Go ahead. I want to address Judge Winn's comments about if we had the technology to distinguish smoking from coal dust, would that change everything? And I think that that's a pertinent comment. And what I would add to it is a lot of this new science doesn't take away from what's in the preamble, and it doesn't take away from those studies. What it does is it adds to it. You know, when the preamble was written, knowledge was here, and now the knowledge is broader. We know so much more about the way the lungs work and the way all these different etiological factors work on the lungs. And the prime example in this case is airway remodeling. This gentleman was prescribed a drug called Spiriva, which a lot of us have heard of. It's a common prescription for a variety of lung ailments. And Spiriva does what's called airway remodeling. It changes the way the air moves in your lungs. Over time, it reduces your total lung capacity. Of course, none of that's in the preamble. The drug wasn't released by the FDA until 2004. But the doctors, our doctors in this case, Drs. Hippenstiel and Zaldivar, looked at his impairment and said, this is consistent not with coal mine dust exposure but with Spiriva. This is exactly what his treating physician told him might happen if he took this drug, and he did, and he has a reduced lung function. And the doctors in these cases have to be able to look at the claimant's actual injury and their history and look at studies, whether they're in the preamble or not, and reach medical conclusions like they did in this case. We can't just say, is it more consistent or less consistent with the preamble? We have to consider all the medical evidence. And that actually brings me to the questions that were raised about the reliance on x-rays and the idea that because our doctors relied on x-rays that we don't need to consider their opinions on legal pneumoconiosis because x-rays only go to clinical pneumoconiosis. That's not true at all. Under this Court's rulings, all the evidence has to be considered under legal pneumoconiosis. It seemed to me that your opponent's argument was getting close to saying that, well, if doctors look at x-rays, that automatically means they have misapplied the standard. Exactly, and that's not the case at all. When you're determining whether or not someone has legal pneumoconiosis, x-rays are one piece of evidence you consider. You consider many other things, and our doctors did. It's not like you check it off and that's one thing. If you lack it, you still can have legal pneumoconiosis. That's true. No x-ray evidence at all. So in some cases, in many cases, x-ray evidence is totally irrelevant for purposes of legal, at least that's the way I understand it. Do you understand incorrectly? No, you're correct, Your Honor, and our doctors opined that. In fact, the ALJ said Dr. Hibbenstiel and Zaldivar say that CWP can develop abstinent positive x-ray findings. But if you go on and look at their testimonies, they're not very likely. I don't know. It makes it less likely. I think that's not a fair characterization of their testimony that it is not very likely, not less likely. They've never seen it, and they think, one of these doctors thinks, that he doesn't have pneumoconiosis at all. Well, and the ALJ found that he didn't have clinical pneumoconiosis. But you acknowledge there are two kinds of pneumoconiosis? Yes. So whether I broke my right leg or my left leg, I've still broken my leg, right? That's true. So if I have pneumoconiosis, it doesn't matter whether it's clinical or whether I have, you can see it on the x-ray, because you get the same black lung benefit. That's true, Your Honor. My only point was the x-rays are something that you can permissibly look at under determining whether or not someone has legal pneumoconiosis. In fact, all of the clinical evidence can be looked at in forming your opinion on legal pneumoconiosis. All of the clinical evidence is to the contrary. You still can have, and that's what the whole regulation is about. You can still have clinical pneumoconiosis. That's true. I mean, that took me a long time to understand that, but that is apparently the law. That's true. I see that my time is up. Unless the panel has further questions, I'm going to sit down. Thank you. Thank you. Thank you.
judges: William B. Traxler Jr., Diana Gribbon Motz, James A. Wynn Jr.